Harry F. Spier v. Commissioner.
Spier v. Commissioner
Docket No. 2781.
United States Tax Court
1944 Tax Ct. Memo LEXIS 113; 3 T.C.M. (CCH) 969; T.C.M. (RIA) 44299; September 18, 1944
*113 Maxwell Shmerler, C.P.A., 551 Fifth Ave., New York, N. Y., for the petitioner. William F. Evans, Esq., for the respondent. STERNHAGEN The Commissioner determined a deficiency of $10,420.36 in income tax for 1940. The petitioner assails the determination (1) that a transaction in shares was an exchange, and assails (2) the Commissioner's valuation of the shares received. Findings of Fact The petitioner, a resident of the City of New York, filed his 1940 income tax return in the Third District of New York. 1. Prior to 1940, the petitioner, at a cost of $44,000 acquired 1,875 preferred shares and 1,595 Class B common shares of I. Rokeach & Sons, Inc., a New York corporation. I. Rokeach & Sons, Inc. owned 350 shares of 8 per cent cumulative preferred and 330 common shares of the New Jersey Pulverizing Company, a New Jersey corporation, which had been organized by petitioner in 1915 and of which he has since been the president and manager. In the latter part of 1939 a salesman of Pulverizing Company at petitioner's request informed I. Rokeach & Sons. Inc. that petitioner desired to sell his Rokeach shares. The president of Rokeach & Sons responded that he would have to discuss the *114 matter with his associates. At a subsequent call at Rokeach & Sons, the salesman was told that the matter of purchasing the Rokeach shares was being considered and it was suggested that petitioner purchase the shares of Pulverizing Company owned by Rokeach & Sons. Subsequently, the petitioner submitted to Rokeach & Sons a memorandum dated January 11, 1940, as follows: I hold 1875 Shares of I. Rokeach & Sons Preferred Stock, face value
$25.00 per share - equals
$46875.00
I hold 1595 Shares of I. Rokeach & Sons Common Stock, face value
$5,00 per share - equals
7975.00
Plus: Back dividends on Preferred Stock which have accumulated but not
been paid (as per Shmerier & Tourin report to December 1939)
$12468.75 plus the Preferred Stock dividend $937.50, due Jan. 10th,
1940 which was not paid - equals
13406.25
$68256.25
I. Rokeach & Sons own 350 shares of Preferred Stock in the New
Jersey Pulverizing Co., par value $100.00 per share - equals
$35000.00
I. Rokeach & Sons own 330 shares of Common Stock in the New
Jersey Pulverizing Co., par value $100.00 per share - equals
33000.00
Plus: Back dividends on the Common Stock of the New Jersey Pulverizing
Co. which have not been paid amounting to
10528.00
$78528.00
If I paid $125.00 per share for the 680 shares of New Jersey Pulveriz-
ing Co. Stock held by I. Rokeach & Sons - that is $25.00 above the
par value, it would add to this amount
17000.00
95528.00
68256.25
Now then, subtracting my holdings in I. Rokeach & Sons from what
theirs would be would leave for me to pay in cash the amount of
$27271.75
*115 By letter dated February 20, 1940, Rokeach & Sons wrote: "We herewith advise that we are willing to close the stock deal pending between us at the figure given to us by your Mr. Schlesinger." On or about March 1, 1940, officers of Rokeach & Sons endorsed and delivered to petitioner certificates for the 350 preferred and 330 common of Pulverizing Company, and petitioner endorsed and delivered to them certificates for 1,875 preferred and 1,595 common of Rokeach & Sons, together with his check for $27,271.75. 2. The authorized capital of Pulverizing Company consisted of 2,000 8 per cent cumulative preferred and 1,000 common (par value $100). After payment of 8 per cent on preferred, the common was entitled to dividends of 8 per cent. Additional dividends were to be divided equally. Upon dissolution, the assets were first to be applied upon the preferred at par, then upon the common at par, and any remaining assets were to be divided equally between them. The preferred had no vote. On December 31, 1939, there were outstanding 1,944 3/4 preferred and 998 common. From 1936 to 1938 the company purchased 55 1/4 shares of its preferred and 2 shares of its common. For these it paid par, except *116 that for 9 shares preferred it paid a premium of $55 and for 25 shares preferred it paid a premium of $125. The shares of Pulverizing Company were closely held and Rokeach & Sons was the only holder of more shares than the petitioner. The shares were not listed on any exchange or sold over the counter. Shortly before the instant transaction a shareholder owning 2 shares of preferred sold one each to two officers of Pulverizing Company, the price for one being $125. Pulverizing Company was engaged in the business of digging and processing silica or industrial sand. This business was hazardous in that its operation involved the risk of silicosis, for which it had to some extent incurred liability. Its first plant was located at Cedarville, New Jersey, where it owned no sand property but purchased sand. After operating there for about five years, when the sand became inferior, it moved to South Vineland, New Jersey, where it also purchased its sand. In about 1925, the sand there became inferior and it moved to Pinewald, New Jersey, where it leased sand property. In 1929, it acquired the Graham Tract, for $4,500, and operated it in 1940. In 1930 it wrote up the value of the Graham *117 Tract by setting up appreciation of $200,000. Prior to 1934 it also acquired the Davis and Bixby tract for $352.44. The sand in the Graham Tract at first was white and compared favorably with other sand in New Jersey but later became inferior. In about 1937, the company took steps to extend and enlarge its plant to produce 100,000 tons of sand annually. This was substantially completed in 1938, but some equipment was installed as late as 1940. The market for the company's sand was within a radius of about 150 miles from its Pinewald plant. The following is made up from the books: Year
Total
Net Worth
Ended
Tangible
Net
Assets Less
Total
Before
12/31
Assets
Appreciation
Appreciation
Liabilities
Appreciation
1934
$323,529.72
$205,913.25
$117,616.47
$48,870.27
$68,746.20
1935
339,994.54
203,854.01
136,140.53
51,212.63
84,927.90
1936
342,771.82
201,298.96
141,472.86
42,593.65
98,879.21
1937
450,360.37
198,349.45
252,010.92
124,086.45
127,924.47
1938
451,060.05
195,395.73
255,664.32
97,677.91
157,986.41
1939
483,173.62
190,854.99
292,318.63
52,935.20
239,383.43
The following tables are in accordance with the books: Tons
of Sand
Cost
Net Profits
Dividends
Year
Shipped
Sales
of Sales
After Taxes
Paid
1935
42,032
$220,901.40
$104,182.73
$36,292.77
$20,000.00
1936
52,125
281,733.91
117,767.99
59,857.78
43,667.50
1937
60,154
326,939.49
138,307.40
76,769.28
49,730.00
1938
60,241
282,603.55
116,399.24
56,303.94
23,692.00
1939
92,608
375,369.18
138,103.19
104,984.02
23,542.00
*118 The value on or about March 1, 1940, of 350 shares of preferred and 330 shares of common of the New Jersey Pulverizing Company was $102,000. Memorandum Opinion STERNHAGEN, Judge: 1. The first contention of the taxpayer is that the transaction in which he disposed of his Rokeach shares, the cost of which to him was $44,000, was a sale for $68,256.25 upon which he realized a gain of $24,256.25. The Commissioner determined that the disposition of the Rokeach shares was not a separate sale but part of an exchange of such shares and cash of $27,271.75 for the Pulverizing shares. The taxpayer's position is not supported by the evidence. The transaction which actually occurred was a transfer of the Rokeach shares and $27,271.75 by the taxpayer to the Rokeach Company and the transfer of the Pulverizing shares by the Rokeach Company to him. This exchange was not a mere form for the effective consummation of two cash sales, but was the consummation of the only contract which was actually made by the parties. The taxpayer's suggestion of sale to Rokeach did not become an offer to sell for an amount of cash, and no such offer was ever accepted by the Rokeach Company. Instead the Rokeach Company *119 made a similar suggestion that the taxpayer buy the Pulverizing shares. Only upon the taxpayer's submission of the written terms of the exchange of both shares and cash did the minds meet and the transaction result. It would be entirely unjustified to break this integrated actual transaction into several constructive steps and adopt the conception, at variance with the fact, that the taxpayer sold his Rokeach shares for cash and used the sale price, together with $27,271.75, as the purchase price for the separately acquired Pulverizing shares. It would be unwarranted to substitute such a constructive pair of transactions for the single transaction which actually occurred. But even if the disposition of the taxpayer's Rokeach shares were regarded as a sale, as he insists, that conception would not avail him, for Section 112(a) requires that the entire amount of gain be recognized, and Section 111(b) fixes the amount realized as the sum of money received plus the value of the property received. Since no money was received by the taxpayer, his gain is measured by the value of the Pulverizing shares received; and we are brought back to the same inquiry as to that value. The exchange, *120 which must be recognized as such, was that of 1,875 preferred and 1,595 common of Rokeach, plus cash of $27,271.75, for 350 preferred and 330 common of Pulverizing. The gain realized on this transaction is the difference between the cost of $44,000, plus $27,271.75, a total of $71,271.75, and the value of the Pulverizing shares. This gain is to be recognized ( Section 112(a), Internal Revenue Code) in accordance with Section 111(b). 2. The value of the Pulverizing shares must be determined from the evidence, such as it is. There is nothing in the Commissioner's deficiency notice to disclose the basis for his valuation of $213.63 per share. We may therefore properly adopt counsel's suggestion that the figure is the result of the application of a formula set forth in A.R.M. 34, using 8 per cent as a return on the average value of tangible assets and capitalizing the remaining average earnings at 15 per cent. The taxpayer urges that the transaction was at arm's length and therefore that the figures upon which it was based are to be taken as figures of actual value, and the gain computed accordingly. The taxpayer's argument begs the crucial question and cannot be adopted. The value *121 of the Pulverizing shares received by him must be determined not by what the parties to the transaction regarded as a satisfatcory hypothesis for dealing, but by the data which appear from the circumstances and history of the corporation, such as its property, earnings, past performances and future prospects, etc. We have considered these, insofar as they appear, and while the limitations of the evidence are such as to preclude a definitive and conclusive findings of the true value of the shares on the date of the transaction, we think it shows at least that the Commissioner's valuation is too high. This was a business which involved an unusual hazard, both in the uncertainty of quality and source of supply of sand and in the inherent risk of liability for damage by silicosis. The value was, however, also indicated by the recent improvement in the business, showing that the five year straight average of values and earnings, taking no account of the upward trend of the figures, was not an adequate basis. We are of opinion from all the evidence that the value of the Pulverizing shares on March 1, 1940, when they were received by the taxpayer in exchange for his Rokeach shares and $27,271.75 *122 was about $150 each, and that the value of both the preferred and the common shares was the same. Since the total number of such shares was 680, it has been found as a fact that the total value of the Pulverizing shares received was $102,000. The gain in the transaction was the difference between that figure and the sum of the cost of $44,000 of the Rokeach shares and the $27,271.75 ($71,271.75), a gain of $30,728.25. Decision will be entered under Rule 50.